Filed 11/3/14  P. v. Vasquez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F066953 |
| Plaintiff and Respondent, | (Super. Ct. No. BF140216A ) |
| v. | |
| JESSIE ARTURO VASQUEZ, | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Kenneth C. Twisselman II, Judge.

Lynette Gladd Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Harry Joseph Colombo, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury convicted appellant Jessie Arturo Vasquez of making criminal threats (Pen. Code,[1] § 422; counts 1, 5, & 6), misdemeanor driving while under the influence of alcohol (Veh. Code, § 23152, subd. (a); count 2), first degree residential burglary (§ 460, subd. (a); count 4), and misdemeanor vandalism (§ 594, subd. (b)(2)(A); count 7); the jury acquitted Vasquez of assault with a deadly weapon (§ 245, subd. (a); count 3). With respect to count 4, the jury found true the allegation that another person was in the residence during the burglary (§ 667.5, subd. (c)(21)). In addition, the court found true the allegations that Vasquez had served three prior prison terms (§ 667.5, subd. (b)). The court sentenced Vasquez to a total prison term of six years four months as follows: the middle term of four years for count 4, plus one year for the prior prison term; a consecutive eight-month term for count 1; and a consecutive eight-month term for count 5. Vasquez was sentenced to a concurrent two-year term for count 6, and two concurrent 30-day terms for counts 2 and 7. Vasquez's sole contention on appeal is the court should have stayed, pursuant to section 654, the terms it imposed for counts 5, 6, and 7. We agree and modify the judgment to correct the sentencing error. As modified, the judgment is affirmed.

## *FACTS*[2]

On December 14, 2011, around 6:00 p.m., Alba Linares was at home in her bedroom and her cousin, Malky Gonzalez, was in the living room watching television, when Linares heard something that sounded like somebody knocking on the door. When she heard the knock again, she went out to the living room and asked Gonzalez if the sound was coming from the television. After she went into the living room, Linares heard a breaking noise and saw Vasquez had broken the window. He was holding an ax

---

**1** Further statutory references are to the Penal Code unless otherwise specified.

**2** Our summary sets forth facts pertinent to counts 4, 5, 6, and 7, which are the subject of Vasquez's claim of sentencing error. We have omitted a summary of the facts underlying the remaining counts because we need not refer to them to resolve the issue on appeal.

2

in one hand and a gun in the other. Linares testified that Vasquez leaned into the house and "told me if I happened to help my son get out of prison that he was going to kill me" and "not to forget that he was the devil; that he was going to return and kill me; that I had to move from there because he wanted to kill me." A man and two women soon arrived in a white truck and took Vasquez with them. As he was leaving, Vasquez hit Linares's van with the ax and left the ax embedded in the van.

Gonzalez similarly testified he was in Linares's living room watching television when he heard somebody knock twice on the door. When Linares came out of her bedroom to ask him if it was the television, the window was broken and Gonzalez saw Vasquez standing in front of him, holding a hatchet. In his other hand, Vasquez was holding a gun and pointing it at Gonzalez. Vasquez asked for Linares's son and threatened to kill Linares and Gonzalez if her son was not there.

When Deputy Sheriff Jacob Freeborn interviewed Linares about the incident, she told him she heard banging on her door and thought someone was kicking it. She came out of her bedroom and saw Vasquez through the window. She was not going to open the door because she did not know who he was, but then Vasquez broke the window and stuck his head inside the window frame. Vasquez looked around and pulled out a gun. Vasquez was holding something in his other hand, which Linares thought was the same hatchet she later found outside after she heard glass breaking on her car. Linares did not speak English well, but Freeborn understood her to say that Vasquez threatened her and wanted her to give up her son.

## DISCUSSION

Vasquez contends section 654 bars separate punishment for his convictions of first degree residential burglary, making criminal threats against Linares and Gonzalez, and misdemeanor vandalism on counts 4 through 7, because they were part of a continuous

3

course of conduct with a single objective, namely, to commit the crime of making a criminal threat. This contention has merit.

"Section 654 precludes multiple punishment for a single act or indivisible course of conduct punishable under more than one criminal statute. Whether a course of conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the 'intent and objective' of the actor. [Citation.] If all of the offenses are incident to one objective, the court may punish the defendant for any one of the offenses, but not more than one. [Citation.] If, however, the defendant had multiple or simultaneous objectives, independent of and not merely incidental to each other, the defendant may be punished for each violation committed in pursuit of each objective even though the violations share common acts or were parts of an otherwise indivisible course of conduct. [Citation.]" (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 267-268.)

Whether the defendant possessed multiple objectives and intents within the meaning of section 654 is a factual question. We will uphold a trial court's explicit or implicit finding if it is supported by substantial evidence. The trial court's determination is viewed in the light most favorable to the People and we presume the existence of every fact that could reasonably be deduced from the evidence. (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) The absence of a timely objection during sentencing does not forfeit a section 654 claim. (*People v. Le* (2006) 136 Cal.App.4th 925, 931.)

Section 459 defines burglary, in relevant part, as follows: "Every person who enters any house … with intent to commit … any felony is guilty of burglary." The jury here was instructed that, to convict Vasquez of burglary, it must find beyond a reasonable doubt that he entered the victim's house with the specific intent to commit the crime of making a criminal threat. The court further instructed the jury that "[i]f anything concerning the law said by the attorneys in their arguments or at any other time during

4

the trial conflicts with my instructions on the law, you must follow my instructions." We presume the jury followed the trial court's instructions. (See, e.g., *People v. Avila* (2009) 46 Cal.4th 680, 719; *People v. Bennett* (2009) 45 Cal.4th 577, 596.) Furthermore, during closing argument, the prosecutor told the jury the People's theory was that Vasquez committed burglary by "going through the window to threaten Alba Linares, to threaten Malky, to threaten anybody who was in the home." By convicting Vasquez of the burglary, the jury necessarily found the felony underlying the burglary was the crime of making a criminal threat.

Because the residential burglary and criminal threats were committed with a single intent and objective, Vasquez can only be punished for one crime. The terms imposed for making criminal threats on counts 5 and 6 must be stayed pursuant to section 654.

We reach the same conclusion with respect to the term imposed for misdemeanor vandalism on count 7. Vasquez's acts of vandalism were incidental to the burglary and criminal threats. Count 7 was specifically predicated on Vasquez's acts of breaking Linares's front window with the ax at the beginning of the burglary and then thrusting the ax into her car as he was leaving her house. We see no evidence the breaking of the window was done with any intent or objective other than to effectuate the burglary by allowing Vasquez to enter the house and threaten the people inside. We agree with respondent that Vasquez's subsequent act of embedding his ax in Linares's car as he walked away from the house evidenced an intent "to intimidate and frighten" Linares and Gonzalez by demonstrating "that he could—and would—carry out his threats." Respondent's argument, however, does not establish multiple objectives for the crimes so much as it highlights their interrelatedness. As already discussed, the burglary was committed with the single objective of committing the crime of making criminal threats. Vasquez's acts of vandalism, which effectuated the burglary and reinforced the criminal

5

threats which were the target of the burglary, constituted an indivisible course of conduct and, therefore, the terms imposed for these crimes must be stayed.

### ***DISPOSITION***

The judgment is ordered modified to reflect that the consecutive eight-month term for count 5, the concurrent two-year term for count 6, and the concurrent 30-day term for count 7, are stayed pursuant to section 654.  As so modified, the judgment is affirmed. The trial court is ordered to send a certified copy of the corrected abstract of judgment to the appropriate authorities.


_____
                                                                HILL, P. J.

WE CONCUR:


_____
LEVY, J.


_____
DETJEN, J.

6